(No. 88-CC-4548—

RAJ GUPTA, M.D., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 24, 1990.*

RAJ GUPTA, M.D., *pro se*, for Claimant.

NEIL F. HARTIGAN, Attorney General (STEVEN SCHMALL, Assistant Attorney General, of counsel), for Respondent.

SOMMER, J.

Dr. Gupta, a physician, filed this action on June 22, 1988, as a lapsed-appropriation claim in which he names the Illinois Department of Children and Family Services (DCFS) as responding agency. He is seeking payment for medical services which he had rendered during the period December 1 through 8, 1986, to a child who was then a foster-care ward of DCFS. Respondent has moved to dismiss the claim pursuant to Section 790.90 of the Court of Claims Rules (74 Ill. Adm. Code 790.90), subsections (1) and (5) of section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat., ch. 110, par. 2—619(1), (5)), section 22(b) of the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.22(b)), and section 11—13 of the Public Aid Code (Ill. Rev. Stat., ch. 23, par. 11—13). Respondent contends that, as Claimant Gupta's patient was a recipient under the Medical Assistance Program (MAP) administered by the Illinois Department of Public Aid (IDPA) when these services were rendered, and as IDPA has sole vendor payment responsibility for recipients' medical care, the validity of this claim must be assessed against vendor-payment requirements, *e.g.*, those recognized in *Canlas v. State* (1987), 39 Ill. Ct. Cl. 150, and *Krakora v. State* (1987), 40 Ill. Ct. Cl. 233.

Respondent cites, in this instance, Claimant's failure to commence this action within the limitation period prescribed by the above-referenced statutes.

Claimant having received due notice of Respondent's motion, the Court makes the following findings.

In its report herein, IDPA describes the unique situation of foster-care children within the overall class of those individuals who receive Aid To Families With Dependent Children (AFDC) assistance. The basic needs of children in foster care (AFDC-F) and certain special needs of children receiving adoption assistance are provided by DCFS, in accordance with applicable State law and with Title IV-E of the Federal Social Security Act (sections 670 *et seq.*, of Title 42, U.S.C.). The medical needs of AFDC-F and adoption-assistance children are, however, paid for by IDPA under its Medical Assistance Program (MAP), in the same manner that such care is provided, under Article V of the Public Aid Code, to other AFDC children. See sections 118, 222, and 308, part 435, 42 C.F.R.; and see IDPA Rules 112.306, 120.324 (89 Ill. Adm. Code 112.306, 120.324), and DCFS Rules 302.360, 359.9 (89 Ill. Adm. Code 302.360, 359.9).

In this case, Claimant's AFDC-F patient had been "removed from the home of the parent * * *, placed under the guardianship of [DCFS] * * *, and under such guardianship, placed in a foster family home" (section 4—1.2 of the Public Aid Code), and had thereby become qualified for AFDC recipient status under IDPA's MAP, prior to Claimant's rendition of the subject services. Throughout the child's foster-care placement (May 1985 through November 1987), IDPA had issued its medical eligibility cards to her foster parent, thereby enabling that parent to identify the child's AFDC-F (or

"category 98") eligibility status to vendors such as Claimant, from whom medical care for the child might be required. See Topics 130 and 131 of the MAP *Handbook For Physicians* and other MAP handbooks which IDPA issues to all MAP-participating vendors. In that IDPA, not DCFS, administers the Medical Assistance Program to which Claimant was obliged to invoice his charges for the subject services, and only IDPA possessed the funds appropriated for payment of Claimant's services, the statutory authority and payment mechanism to effect such payment, Claimant should appropriately have named IDPA as responding agency in this matter.

IDPA reports that the hospital in which this AFDC-F child was a patient had timely invoiced its charges for care during this inpatient stay (Nov. 21 through Dec. 9, 1986), and had been paid by the Department on January 8, 1987. Invoices were also timely received from four other physicians involved in the child's treatment during this stay, and all MAP-covered services charged in those invoices had also been paid by IDPA, during the period January 8 through March 4, 1987. Each of said medical vendors' invoices had accurately identified the child whom they had treated, by listing the recipient identification number, or "RIN," which IDPA had assigned to the child.

Respondent also contends that Claimant's cause of action had already been barred by the time limitation imposed by section 22(b) of the Court of Claims Act and section 11—13 of the Public Aid Code. We agree. The record in this case shows that Dr. Gupta invoiced his charges for the subject services to IDPA on December 23, 1986; that his DPA-form 2360 invoice listed an incorrect recipient identification number, or "RIN." By

voucher-response dated January 16, 1987, IDPA notified Claimant that it was refusing to pay the invoiced service charges, because the "Recipient (as misidentified by the incorrect RIN listed on the invoice), was Not Eligible on Date(s) Of Service." A vendor's invoice to IDPA, charging for services to a named patient, must correctly list the RIN which has been assigned to that patient. See *Rock Island Franciscan Hospital v. State* (1987), 39 Ill. Ct. Cl. 100; *Simon v. State* (1987), 40 Ill. Ct. Cl. 246, 249; *Mercy Hospital and Medical Center v. State* (1988), 40 Ill. Ct. Cl. 269, and prior decisions therein cited; *Franciscan Medical Center v. State* (1988), 84 CC 118; and *Riverside Medical Center v. State* (1988), 40 Ill. Ct. Cl. 274, 275.

Claimant does not allege that he rebilled these services, with a corrected RIN, to IDPA, within the one-year period prescribed by IDPA Rule 140.20 (89 Ill. Adm. Code 140.20). Instead, he filed this Court action on June 22, 1988, more than one year following IDPA's notice of payment refusal. By that time, his cause of action in respect to these services had already been barred, as provided by the above-referenced statutes.

It is therefore hereby ordered that Respondent's motion to dismiss Dr. Gupta's complaint and underlying cause, on the grounds addressed above in this opinion, is hereby granted; and this claim is dismissed.